UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDERSON LEE FERNANDERS,

       Plaintiff,                        CIVIL ACTION NO. 09-12933

vs.                                    DISTRICT JUDGE JOHN FEIKENS

                                        MAGISTRATE JUDGE DONALD A. SCHEER

MICHIGAN DEPARTMENT OF
COMMUNITY HEALTH,

       Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: I recommend that Defendant's Motion to Dismiss be granted as to Counts One through Five of the Complaint, and as to the contract based claim in Count Six. I recommend that the Motion to Dismiss be denied as to the Title VII race discrimination claim asserted in Count Six.

\* \* \*

      This matter originally came before the magistrate judge on Order of Reference for all pretrial matters. Plaintiff, proceeding pro se, filed a Complaint on July 24, 2009, against the Michigan Department of Community Health/Hawthorn Center alleging he was unfairly terminated from his employment as a child care worker by the state agency. Plaintiff was employed by the defendant from October 2006 through July 2008, at the Hawthorn Facility in Northville, Michigan. He claimed that he was wrongfully discharged by the agency on July 21, 2008, as a result of racial bias. Claiming violations of Title VII of the Civil Rights Act of 1964 and Michigan's Whistleblower Act, Plaintiff sought injunctive relief and monetary damages.

Defendant filed a Motion to Dismiss on September 29, 2009, arguing, inter alia, that Plaintiff's failure to provide a right to sue letter from the Equal Employment Opportunity Commission (EEOC) barred him from bringing a Title VII action in federal court. Plaintiff filed a response to Defendant's Motion to Dismiss on October 2, 2009, but he did not provide a right to sue letter from the EEOC.

In a Report and Recommendation dated October 30, 2009, it was recommended that the case be dismissed for failure to exhaust administrative remedies before the EEOC. In addition, it was recommended that Plaintiff's claims under Michigan's Whistleblower Protection Act be dismissed for failure to state a claim since the state statute expressly excludes classified civil service employees from the right to sue under the Act (Docket #15).

Plaintiff submitted his right to sue letter from the EEOC with his Objections to the October 30, 2009 Report and Recommendation (Docket #16). In an Order of November 23, 2009, the Court returned Defendant's Motion to Dismiss the Title VII claims to the undersigned for further consideration. The Court adopted the Report and Recommendation as to the state law claim, and dismissed Plaintiff's whistleblower count (Docket #23).

In Plaintiff's response to Defendant's Motion to Dismiss, dated October 2, 2009, he insisted that he had been made to work in a racially hostile work environment, and that he was fired by the defendant based upon his race and in retaliation for having filing grievances against management with his union. Defendant filed a reply on October 9, 2009, maintaining that Plaintiff had been discharged for poor work performance, and that the agency's termination of his employment was not racially motivated or based upon Plaintiff's protected activity.

APPLICABLE LAW AND STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief may be granted. The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A complaint need not contain detailed factual allegations. Nonetheless, a plaintiff's obligation to provide the "grounds" of his entitlement to relief, as required by Fed.R.Civ.P. 8(a)(2), requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Rather, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that the allegations are true. Bell Atlantic Corporation v. Twombly, 127 S.Ct 1955, 1964 (2007). The pleading must contain something more than a statement of facts which creates a mere suspicion of a legally cognizable right of action. The court should proceed on the assumption that all the allegations of the complaint are true. A well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not countenance dismissal based on a judge's disbelief of the plaintiff's factual allegations. Id. The Court is not obliged, however, to accept a plaintiff's unsupported legal conclusions.

HOSTILE WORK ENVIRONMENT CLAIM (Count One)

Plaintiff alleges that the Defendant's actions violated federal civil rights laws. He claims in Count One that he was subjected to a hostile work environment, in violation of 42 U.S.C. § 2000e (also  known as Title VII of the Civil Rights Act of 1964). The elements of a prima facie case of a racially hostile work environment are: 1) plaintiff is a member of a

protected class; 2) he was subjected to unwelcome racial harassment; 3) the harassment was based on race; 4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance; and 5) the employer knew or should have known about the harassing conduct but failed to take corrective action. Bailey v. USF Holland, Inc., 526 F.3d 880, 885 (6th Cir. 2008); Hafford, 183 F.3d at 512. Whether a hostile work environment exists is judged based on "the 'totality of the circumstances,' and not discrete events in isolation." Ladd v. Grand Trunk W. RR., 552 F.3d 495, 500 (6th Cir. 2009) (citation omitted).

Plaintiff alleges in his complaint that the following eleven actions by Defendant created a hostile work environment:

1. misinforming Plaintiff of the policy on when police should be called to address patient abuse;

2. ending the practice of accommodating school days;

3. initiating a "loss time" policy, which resulted in Plaintiff losing pay following a determination that he had faked illness to attend classes;

4. offering to settle Plaintiff's grievance over the loss time;

5. "agreeing in theory" to take specific actions to address Plaintiff's civil rights complaints, such as amending its policy on patient abuse complaints;

6. agreeing to keep a log of police contacts made by administrators;

7. agreeing to provide sensitivity training;

8. contacting the Michigan State Police on a complaint of patient abuse concerning Plaintiff;

9. terminating Plaintiff and having him escorted out of the facility;

10. denying Plaintiff's grievances;

>    11.  causing Plaintiff's "experiencing having [his] Michigan Department of Civil Rights, and the U.S. Equal Employment Opportunity Commission [complaints] closed due to lack of evidence."

(See Complaint, Docket #1, pp 2-10).

The Supreme Court has held that, in order to constitute actionable harassment, the conduct complained of must be judged by both an objective and a subjective standard, i.e., it must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. Harris, 510 U.S. at 21-22; Williams v. Gen. Motors Corp., 187 F.3d 553, 566 (6th Cir. 1999); Abeita, 159 F.3d at 251. In other words, the harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. Valentine-Johnson v. Roche, 486 F.3d 800, 814 (6th Cir. 2004).

Plaintiff does not allege that any racially derogatory comments were made in the workplace. His claim is based on the theory that the facially neutral conduct of his supervisors towards him was, in fact, based on his race. Conduct that is not explicitly race-based may be illegal and properly considered in a hostile-work-environment analysis when it can be shown that, but for the employee's race, he would not have been the object of harassment. Farmer v. Cleveland Pub. Power, 295 F.3d 593, 605 (6th Cir. 2002), *abrogated on other grounds by* White v. Columbus Metro. Housing Auth., 429 F.3d 232, 240 (6th Cir. 2005).

None of the eleven alleged actions by Defendant, individually or in combination, created a hostile work environment or were indicative of racial harassment. Plaintiff does

not assert that the listed actions and management policies were applied to him on the basis of his race. For instance, Plaintiff does not reveal how Defendant's offer to settle a grievance, or to address Plaintiff's concerns, made his workplace hostile. Nor does he assert facts tending to demonstrate that Defendant's timekeeping policies were implemented differently for black employees than for their white counterparts. Defendant's alleged actions during Plaintiff's tenure are simply not objectively severe or discriminatory toward Plaintiff so as to support a claim.

While Plaintiff's termination and subsequent removal from the facility were certainly objectively adverse employment actions, they represented the end of his employment and cannot be said to have made his workplace hostile by affecting his job performance. Plaintiff's allegation that Defendant administered its patient abuse reporting policy in a racially discriminatory manner as to him is properly addressed as a disparate treatment claim. That single incident, even if accepted as true, is insufficient to establish a racially hostile work environment.

Plaintiff fails to allege that, but for his race, he would not have experienced any of the remaining events allegedly causing a hostile work environment. He did not allege that he was subjected to objectively severe or pervasive race based harassment sufficient to create a abusive working environment. As he has failed to allege facts to support his conclusion that he endured harassment based on race, or that the harassment unreasonably interfered with his job performance, Plaintiff's hostile work environment claim should be dismissed.

<u>DISPARATE TREATMENT</u> (Count Two)
<u>SYSTEMIC DISPARATE TREATMENT</u> (Count Four)

Counts Two and Four of the Complaint allege disparate treatment. Both counts are based upon a single set of facts. Plaintiff alleges that, on March 21, 2008, he was accused of harming a female patient. The accusation was reported by his superiors to the Michigan State Police, and an investigation was conducted. Plaintiff was suspended with pay during the inquiry. He was ultimately exonerated and continued his employment. Plaintiff maintains that Defendant departed from long established policy in reporting the alleged patient abuse to the police. He further alleges that black child care workers (CCW) are treated more severely than their white counterparts under similar circumstances.

A prima facie case of disparate treatment discrimination under Title VII requires Plaintiff to prove that (1) he is part of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated individuals who are not members of his protected class. <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802-805 (1973).

Defendant concedes that Plaintiff, an African American, is a member of a protected class. For purposes of the instant motion, Defendant has accepted the proposition that Plaintiff was qualified for his job. Defendant maintains, however, that Plaintiff has failed to satisfy the remaining elements of a prima facie case of disparate treatment.

Defendant argues that Plaintiff has failed to allege facts establishing the third element of a prima facie case, that is, that Plaintiff suffered a materially adverse employment action. The Complaint states that Plaintiff was suspended with pay during the

**7**

pendency of the police investigation, and that he was exonerated. He was returned to duty and remained employed by Defendant until his termination in July 2008.

> [A] Materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999). Under this standard, de minimus employment actions are not materially adverse and, thus, not actionable. Bowman v. Shawney State University, 220 F.3d 456, 461-62 (6th Cir. 2000). Our Circuit has specifically held that a suspension with pay pending a timely investigation into suspected wrongdoing is not an adverse employment action. Peltier v. Untied States, 388 F.3d 984, 988 (6th Cir. 2004). In view of the clear statements in the Complaint that Plaintiff was suspended with pay during the police investigation, and that he was exonerated by that inquiry and returned to duty, I find that the Plaintiff has not alleged an adverse employment action, and that his Complaint fails to state a compensable claim in Counts 2 and 4. I recommend that those Counts be dismissed.

In order to demonstrate that there was intentional systematic disparate treatment of all African-American workers at Hawthorn Center, Plaintiff relies in Count Four on statistical data provided to the Equal Employment Commission by his union. Based upon Plaintiff's analysis of these statistics, he avers that between 75 to 100 percent of child care workers suspended from 2007 through 2009 at Hawthorne Center were African-American (See paragraph 31(h)(I-iii) at page 18 of Complaint).

Plaintiff fails to disclose what offenses the other suspended child care workers were alleged to have committed. Moreover, he did not indicate what percentage of the overall child care worker population is African-American, which would be necessary to determine whether suspensions were disproportionately assessed against the protected class. Moreover, the Supreme Court has noted a "manifest" and "crucial" difference between an individual's claim of discrimination and a class action alleging a general pattern of discrimination. See Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984). The pattern or practice method of proving discrimination is not available to individual plaintiffs. Bacon v. Honda Motors, 370 F.3d 565, 575 (6th Cir. 2004). Accordingly, Plaintiff has failed to plead facts sufficient to state a claim of disparate treatment under Title VII. Counts Two and Four of the Complaint should be dismissed.

<u>UNLAWFUL EMPLOYMENT PRACTICE</u> (Count Three)

Plaintiff alleges that Defendant engaged in unlawful employment practices when its management agents acted contrary to Michigan civil service rules and the union's collective bargaining agreement. An "unlawful employment practice" is not a discrete cause of action under Title VII of the Civil Rights Act. The Act states that discrimination on the basis of race, color, religion, sex or national origin is an unlawful employment practice. 42 U.S.C. § 2000e-2. Similarly, the Civil Rights Act makes it an unlawful employment practice to retaliate against a person for engaging in protected conduct. 42 U.S.C. § 2000e-3. However, there is no separate cause of action for unlawful employment practice under Title VII based upon violation of state law or contract provisions. While an individual union member may have standing as a third party beneficiary to maintain a suit for violation of a collective bargaining agreement, Plaintiff has not alleged sufficient facts to raise his right

to relief under the contract beyond the speculative level. Count Three of the Complaint asserts no more than legal conclusions, and is insufficient to state a claim. Bell Atlantic Corp. V. Twombly, 127 S.Ct. 1955, 1964 (2007).

### RETALIATION CLAIM (Count Five)

Plaintiff alleges that his wages were reduced on December 23, 2007 and January 15, 2008, when Defendant disallowed payment for sick time after determining that he had fabricated an illness in order to attend college classes (See paragraphs 14(b)(ii) and 34(a) of Complaint). Plaintiff alleges in Count Five that the reduction in pay was in retaliation for his prosecution of a union grievance against management personnel at the Hawthorn Center.

To state a claim for retaliation, Plaintiff must allege that: (1) he had engaged in Title VII protected activity; (2) the employer had knowledge of this fact; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 563 (6th Cir. 2004).

The fact that an adverse act (reduction in pay) occurred after a protected activity (filing of grievance) is insufficient in itself to support a claim of retaliation. There must be a causal link between the grievance and the loss of pay. The causal connection may be established by the facts that the adverse action was taken shortly after the protected activity and that the Plaintiff was treated differently from other employees. Singfield, 389 F.3d at 563; Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Plaintiff's allegations are insufficient in both respects. The Complaint states that Defendant twice shorted Plaintiff's pay after learning that his grievance was denied at Step 3. Plaintiff

thereafter sought arbitration, and Defendant proposed a settlement of the dispute. The Complaint contains no facts tending to explain why Defendant's alleged acts of retaliation occurred in the middle of the grievance process, rather than after its initiation or its conclusion. Moreover, Plaintiff admits that his paycheck was "shortened" as a result of management's toughened lost time policy (see paragraph 14(b)(ii) at page 6 of Complaint). Plaintiff has failed to assert facts establishing a causal link between his grievance and the reduction in his pay. His unsupported conclusions are nothing more than speculation. He does not allege that the lost time policy was instituted in retaliation for any protected activity on his part, or that he was treated differently under it than any other employee. Plaintiff has failed to state a claim for retaliation under Title VII and Count Five should be dismissed.

WRONGFUL DISCHARGE AND TERMINATION (COUNT SIX)

Plaintiff alleges that he is entitled to money damages and injunctive relief for wrongful discharge by the Michigan Department of Health/Hawthorn Center. He claims that he was terminated from his job in violation of "an express contract" contained in Hawthorn Center's employee manual (See paragraphs 37 & 38 at page 19 of Complaint).

The Department of Community Health is a subdivision of the State of Michigan. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

> U.S. Const. amend. XI.

This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments. Pennhurst State School & Hospital

v. Halderman, 465 U.S. 89, 100-01 (1984). As a result, the Defendant is entitled to dismissal of the contract law claim based on Eleventh Amendment immunity.

Plaintiff also asserts in Count Six that his termination was based upon his race. To demonstrate a prima facie case, he must allege that: 1) he was a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by someone outside the protected class. Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006).

The Complaint asserts that Plaintiff is an African American male. (Complaint, Paragraph 2). He alleges that his employment by Defendant was terminated based upon his race. (Complaint, Paragraph 37). Termination is clearly an adverse employment action under Title VII. Defendant has conceded, for purposes of this motion that Plaintiff was qualified for the position he held. Accordingly, the first three elements of a prima facie case are satisfied.

Paragraph 39 of the Complaint asserts that, after Plaintiff was discharged, Defendant hired white employees to perform the same work. Accordingly, he has alleged that he was replaced by someone outside the protected class. In evaluating a Motion for Summary Judgment, the court must accept Plaintiff's factual allegations as true. Mayer v. Mylod, 998 F.2d 635, 648 (6th Cir. 1993). A Complaint need not contain detailed factual allegations, so long as the facts asserted are enough to raise a right to relief beyond the speculative level, on the assumption that the allegations are true. Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1964 (2007). Applying those standards, I am satisfied that Plaintiff has alleged all necessary elements of race based discrimination with respect to his

termination. I recommend that Defendant's Motion to Dismiss be denied as to the race discrimination claim in Count Six.

Courts generally hold pro se pleadings to a less stringent standard than those drafted by an attorney. Nonetheless, liberal treatment of pro se pleadings does not require lenient treatment of substantive law. Even a pro se Plaintiff must state and support all elements of a substantive claim to avoid an adverse judgment. Fed.R.Civ.P. 15 has been construed to establish a liberal policy with respect to amendments of defective pleadings. This Plaintiff, for example, has effectively amended his Complaint by the late submission of his right to sue letter. In order to be granted leave to amend, a party must provide specific facts to support his claim. Should Plaintiff move to amend, and support his request with previously undisclosed facts sufficient to withstand dismissal, leave should be granted. Absent such facts, however, a motion for leave to amend his Complaint would be fruitless.

For all of the above reasons, I recommend that Defendant's Motion to Dismiss be granted as to Counts One through Five of the Complaint, and as to the contract based claim in Count Six. I recommend that the Motion to Dismiss be denied as to the Title VII race discrimination claim asserted in Count Six.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues

**13**

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<pre>                                          <u>s/Donald A. Scheer</u>
                                          DONALD A. SCHEER
                                          UNITED STATES MAGISTRATE JUDGE
DATED: February 3, 2010</pre>

___

**CERTIFICATE OF SERVICE**

I hereby certify on February 3, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 3, 2010: **Anderson Lee Fernanders**

<pre>                                          <u>s/Michael E. Lang</u>
                                          Deputy Clerk to
                                          Magistrate Judge Donald A. Scheer
                                          (313) 234-5217</pre>