UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDERSON LEE FERNANDERS,   Case No. 09-12933

       Plaintiff,   District Judge Avern Cohn

v.   Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF COMMUNITY
HEALTH / HAWTHORNE CENTER,

       Defendants.
_____/

### REPORT AND RECOMMENDATION

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1962, 29 U.S.C. § 2000e, *et seq*. ("Title VII"). Before the Court is Defendant's Motion for Summary Judgment [Doc. #74], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that Plaintiff's complaint be DISMISSED WITH PREJUDICE.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Anderson Lee Fernanders filed a *pro se* employment discrimination complaint against the Michigan Department of Community Health / Hawthorne Center ("MDCH"), alleging seven claims for relief, to wit,

    -Count I, Hostile Work Environment;

    -Count II, Individual Disparate Treatment;

    -Count III, Unlawful Employment Practice (based on Collective Bargaining Agreement);

    -Count IV, Systemic Disparate Treatment;

-Count V, Retaliation;

-Count VI, Wrongful Discharge (based on contract and Title VII);

-Count VII, Whistleblower Act.

On November 23, 2009, Judge Avern Cohn, adopting a Report and Recommendation ("R&R") of Magistrate Judge Donald A. Scheer, dismissed Count VII, under the Whistleblower Act, and remanded to Judge Scheer for additional proceedings. *See* Doc. #23. On February 3, 2010, Judge Scheer issued a second R&R in which he recommended that all remaining claims be dismissed, except for the Title VII race-discrimination claim alleged in Count VI of the complaint. *See* Doc. #31. On May 10, 2010, Judge Cohn adopted this R&R, dismissing Counts I through V and the contract based claim in Count VI, and denying the Defendants' motion to dismiss as to the Title VII race discrimination claim in Count VI.

Thus, the only remaining claim is that of race discrimination under Title VII.

Plaintiff, an African-American male, was employed by MDCH, at the Hawthorne Center, On October 2, 2006, as a Child Care Worker ("CCW").[1] *Complaint*, ¶ 5. In 2007, following a complaint of abuse of a patient, he was suspended (with pay) pending an investigation. The incident was also reported to the Michigan State Police and Protective Services. *Id*. ¶¶ 18-19, 31. Both an internal investigation and the State Police investigation found that the patient's allegations could not be substantiated; Plaintiff was "cleared of all allegations," and no formal discipline was imposed. *Id*. ¶ 31; *Plaintiff's Deposition, Defendant's Exhibit A*, pp. 96, 99.

In March of 2008, Plaintiff, along with another CCW, was again suspended with pay as the result of a patient abuse complaint. At the conclusion of the investigation, Plaintiff was

---

[1] Defendant states that "[t]he Hawthorne Center is a psychiatric hospital for children that is operated by the Michigan Department of Community Health." *Brief in Support of Motion for Summary Judgment*, p. 1.

-2-

returned to work, and received no formal discipline.

On July 21, 2008, Plaintiff's employment was terminated. In his complaint, he alleges that he was terminated based on his race. *Complaint*, ¶ 37. He also alleges that after his discharge, "the defendant hired white employees to perform the same work."

As to the suspensions, Plaintiff conceded at his deposition that there was no loss of pay, no loss of seniority, no removal from Hawthorne Center or removal from his position, no loss of rank, and no loss of benefits. *Defendant's Exhibit A, Plaintiff's Deposition*, pp. 117-118.

Defendant states that Plaintiff's employment contract was not renewed because of his repeated non-compliance with the Hawthorne Center's Time and Attendance Policy. On December 19, 2007, Plaintiff received "verbal counseling" based on failing to report for work after requesting a shift change. *Defendant's Motion, Exhibit C*. He was also issued unapproved "lost time" and placed on time and attendance monitoring for 180 days. *Id*.

The Defendant's Time and Attendance Policy (Exhibit F) contains a call-in procedure for absences, and requires documentation for absences due to illness. On January 9, 2008, Plaintiff missed work and was again given unapproved lost time based on an undocumented absence. *Defendant's Motion, Exhibit H*. He received written formal counseling, with a warning that if he incurred further unauthorized lost time within 180 days, he would receive a written reprimand. *Id.*

On March 20, 2008, Plaintiff received a third lost time notice, based on having missed work on February 14 and March 6, 2008. *Id.*, *Exhibit I*. Following a Disciplinary Conference, Plaintiff received a written reprimand, in which he was warned that "[f]ailure to comply with expectations of this written reprimand may result in further disciplinary action." *Id., Exhibit K*.

On June 4, 2008, Plaintiff received a fourth lost time notice based on a May 19th violation of the call-in policy. *Id.*, *Exhibit P*. He was also given an unfavorable Interim Employee Rating, which noted his repeated violations of policy, and concluded, "If you are charged with succeeding unauthorized lost time during the interim rating review, you shall be dismissed for unsatisfactory service." *Id., Exhibit O*.

On July 21, 2008, Plaintiff received another unfavorable Interim Employee Rating, *Id., Exhibit Q*, based on a July 9, 2008 incident. The rating stated:

> "On 7/9/08 Mr. Fernanders failed to comply with departmental policies and procedures related to time and attendance, as it relates to the Hawthorn Call-in Policy. Mr. Fernanders called to the Nursing at 3:10 pm on the above date stating that he had overslept and that he would be coming to work at 5:30 pm. This absence was not authorized and lost time will be assessed, which will result in a[n] unsatisfactory service and dismissal."

On that same date, Plaintiff was informed that his appointment term had expired, and that his services would not be renewed. *Id., Exhibit R*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. DISCUSSION

Plaintiff has not presented any direct evidence of discriminatory intent with regard to either his suspensions or his termination. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 523 (6th Cir.2007) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir.2004)). Therefore, his case is reliant on circumstantial evidence the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a *prima facie* case of unlawful discrimination. Once he has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[2] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

### A. The Prima Facie Case

In order to establish a prima facie showing of racial discrimination, the Plaintiff must

---

[2]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

-5-

introduce sufficient evidence that (1) he was a member of the protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824.

### i    The Suspensions

The Plaintiff, an African-American male, satisfies the first factor, in that he is a member of a protected class. However, he has not shown that his paid suspensions, which resulted in no loss of benefits or pay, or material change in his responsibilities or seniority, and involved no formal discipline, were adverse employment actions. *See Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885-86 (6 th Cir.1996)(stating that an adverse employment action must typically constitute a "materially adverse change in the terms of ... employment," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

Nor has Plaintiff shown that similarly situated employees who were not members of a protected class were treated more favorably under similar circumstances. Indeed, the chart contained in *Plaintiff's Exhibit 5*, submitted with his response [Doc. #77], although not verified or supported by any accompanying documentation, purports to show that between 2007 and 2009, three Caucasians were suspended with pay based on abuse allegations.

Eleven African-Americans were suspended with pay during the same period. Moreover, according to the chart, of the five workers involved in incidents where the State Police were notified, three were African-American and two were Caucasian. Thus, while the chart would show that some Caucasians were treated *similarly* to the Plaintiff,[3] it does not show that any similarly situated non-minority workers were treated more favorably. Thus, Plaintiff also fails the fourth prong of a *prima facie* case–that his suspensions occurred "under circumstances giving rise to an inference of unlawful discrimination."

Therefore, to the extent that Plaintiff's Title VII claim rests on his suspensions with pay, he has failed to establish a *prima facie* case of discrimination, and summary judgment in favor of the Defendant is appropriate.

### ii. Plaintiff's Termination

Here, Plaintiff meets three of the factors that make up a *prima facie* case: he is a member of a protected class, he is otherwise qualified for the job, and he suffered an adverse employment action. It is on the fourth prong– that the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination– that his case falters.

In comparing treatment with "similarly situated" individuals, a plaintiff "must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), that is, that the comparables must be "nearly identical" in all relevant aspects. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 700, 568 N.W.2d 64 (1997). In this case, Plaintiff has not shown that any non-minority employees were treated differently or more favorably when they incurred unauthorized "lost time" or failed to document their absences from work. In fact, he testified as follows at his deposition:

---

[3] At his deposition, Plaintiff conceded that Mike Donnelly, a Caucasian male, was also suspended pending an abuse investigation. *Defendant's Exhibit A, Plaintiff's Deposition*, pp. 103, 261.

> Q: Are you aware of any white employees or white CCWs during this time period who failed to provide documentation supporting their absences from work?
>
> A: No, I'm not. *Plaintiff's Deposition*, p. 240.

Plaintiff also conceded that the Defendant's "lost time" policies applied to all employees. *Id.*, p. 131.

Plaintiff has therefore failed to establish a *prima facie* case of racial discrimination regarding his termination.

### B. Pretext

Even assuming for the sake of argument that Plaintiff had established a prima facie case, the Defendant has proffered strong evidence that Plaintiff was fired for a non-discriminatory reason. The Plaintiff repeatedly violated the Defendant's time and attendance policies, and received progressive discipline, including verbal counseling, written formal counseling, a written reprimand, a disciplinary conference, and an Interim Employee Rating, where he was warned that "[i]f you are charged with succeeding unauthorized lost time during the interim rating review, you shall be dismissed for unsatisfactory service." On July 9, 2008, he incurred another unauthorized lost time infraction, and consistent with the warning and the Defendant's policies, he was fired.

Under the third prong of *McDonnell Douglas*, the burden shifts back to the Plaintiff to show that the Defendant's stated reasons are pretextual. He may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Smith v. Leggett Wire Co., supra*, 220 F.3d at 759 (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

Based on the Defendant's policies, as well as the progressive warnings that Plaintiff

received, the proffered reason for Plaintiff's discharge is well-grounded in fact. Likewise, the proffered reason was clearly sufficient to justify Plaintiff's discharge.

The Plaintiff has not shown that the Defendant's proffered reason did not actually motivate the decision to fire him. Again, Plaintiff received progressive discipline as the result of repeated violations of the Time and Attendance Policy, and was clearly warned that a future violation would result in his dismissal. He has not offered any evidence to show that non-minority CCWs or other employees were treated differently for similar violations.

One might argue that the Defendant's decision to terminate the Plaintiff's employment was too harsh a remedy for his having overslept and missed work. But this Court does not "sit as a super-personnel department" to second-guess the wisdom of an employer's standards. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir.2004) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 960 (8th Cir.1995)). The question is not whether Plaintiff's termination was disproportionate or unwise, but whether it was motivated by improper racial considerations. The Plaintiff has failed to support any genuine issue of material fact as to his claim of racial discrimination, and under the facts of this case, no rational trier of fact could find in his favor. *Simmons-Harris v. Zelman, supra*. Therefore, summary judgment should be granted in Defendant's favor.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #74] be GRANTED, and that Plaintiff's complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                               s/ R. Steven Whalen
                               R. STEVEN WHALEN
                               UNITED STATES MAGISTRATE JUDGE

Date: July 19, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 19, 2012.

Anderson Lee Fernanders        s/Johnetta M. Curry-Williams
P.O. Box 32219                         Case Manager
Detroit, MI 48232